IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ALANA CRUTCHER-SANCHEZ, f/k/a ALANA SMITH, | ) ) ) |
| Plaintiff, | ) 8:09CV288 ) ) |
| v. | ) ) MEMORANDUM AND ORDER |
| COUNTY OF DAKOTA, NEBRASKA, JAMES L. WAGNER, RODNEY HERRON, and JOE RAMIREZ, in their official and individual capacities, | ) ) ) ) ) |
| Defendants. | ) ) |

This matter is before the court on the joint motion to dismiss filed by defendants County of Dakota, Rodney Herron and James L. Wagner, Filing No. 46, and defendant Joe Ramirez's motions to dismiss him in his individual capacity, Filing No. 63, and in his official capacity, Filing No. 61. This is an action for damages and injunctive relief for violations of civil rights under 42 U.S.C. § § 1981, 1983 and 1985.

In her second amended complaint, Filing No. 45, the plaintiff, Alana Crutcher-Sanchez, a Native American woman, alleges she was terminated from her employment as a Correctional Officer after being subjected to continuous, unsolicited, and unwelcome touching and race and gender-based verbal harassment from Chief Deputy Rodney Herron, and unwelcome race and gender-based verbal harassment from Sheriff James L. Wagner and Deputy Joe Ramirez. She alleges that the defendants conspired to deprive her of her rights and acted in furtherance of the conspiracy by discriminating against her and retaliating against her for her complaints and refusal to "countenance" the hostile environment. Filing

No. 45, ¶ 27. Crutcher-Sanchez further alleges that Deputy Ramirez wrote her termination letter and forged Sheriff Wagner's signature.

Under the Federal Rules, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The rules require a "'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 n.3. (2007) (quoting Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly,* 550 U.S. at 555). The complaint must plead "enough facts to state a claim for relief that is plausible on its face." *Twombly,* 550 U.S. at 557; *C.N. v. Willmar Pub. Sch., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 629 (8th Cir. 2010). After *Twombly*, "a plaintiff 'must assert facts that affirmatively and plausibly suggest that the pleader has the right [she] claims . . . , rather than facts that are merely consistent with such a right.'" *Gregory v. Dillard's, Inc.*, 565 F.3d 464 (8th Cir. 2009) (*en banc*) (quoting *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007)).

The factual allegations of the complaint must be sufficient to push the claims "across the line from conceivable to plausible." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (2009) (quoting *Twombly*, 550 U.S. at 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Determining whether a complaint states a plausible claim for relief is "a context-specific task" that requires the court "to draw on its judicial experience and common sense." *Id.* at 1950.

The factual allegations of a complaint are assumed true and construed in favor of the plaintiff. *Twombly,* 550 U.S. at 556 (stating "[o]n the assumption that all the allegations in the complaint are true (even if doubtful in fact)," the allegations in the complaint must "raise a right to relief above the speculative level"). However, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Iqbal,* 129 S. Ct. at 1949-50 (stating "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Although legal conclusions can provide the complaint's framework, they must be supported by factual allegations. *Id.* at 1950 (noting that "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions"). There is no standard of heightened specificity, more stringent than the usual pleading requirements of the civil rules, in cases alleging municipal liability under section 1983. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168 (1993); *Frey v. City of Herculaneum,* 44 F.3d 667, 671 (8th Cir. 1995).

The Civil Rights Act, 42 U.S.C. § 1981, as amended in 1991, gives all persons the equal right to "make and enforce contracts" and provides a cause of action for race discrimination in employment. *King v. Hardesty,* 517 F.3d 1049, 1057 n.4 (8th Cir. 2008). The elements of a claim under § 1981 are: (1) membership in a protected class, (2) discriminatory intent on the part of the defendant, (3) engagement in a protected activity, and (4) interference with that activity by the defendant. *See Gregory,* 565 F.3d at 469. Section 1981 provides a cause of action for race-based employment discrimination based on a hostile work environment that is shown when incidents of harassment occur with regularity

3

that can be termed pervasive. *See Greer v. St. Louis Reg'l Med. Ctr.*, 258 F.3d 843, 847 (8th Cir. 2001). A claim for retaliation is also cognizable under § 1981. *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, –-, 128 S. Ct. 1951, 1961 (2008). The prohibition on racial discrimination in § 1981 covers claims of retaliation against those who advocate the rights of groups protected by that prohibition. *See id.* at 1955.

The "right to be free from gender discrimination is secured by the equal protection clause of the Fourteenth Amendment." *Tipler v. Douglas County, Neb.*, 482 F.3d 1023, 1027 (8th Cir. 2007); *Ottman v. City of Independence, Mo.*, 341 F.3d 751, 756 (8th Cir. 2003) ("intentional gender discrimination in public employment by persons acting under color of state law violates the Equal Protection Clause of the Fourteenth Amendment"). Equal protection claims may be asserted under 42 U.S.C. § 1983. *See, e.g., Mercer v. City of Cedar Rapids*, 308 F.3d 840, 844 (8th Cir. 2002). Discrimination based on gender that creates a hostile or abusive working environment also violates § 1983. *Weger v. City of Ladue*, 500 F.3d 710, 717 n.4 (8th Cir. 2007) (hostile work environment claims under Title VII and § 1983 are subject to the same analysis). To state a claim for hostile environment discrimination, an employee must show: (1) she belongs to a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on race or gender; (4) the harassment affected a term, condition, or privilege of employment; and (5) her employer knew or should have known of the harassment and failed to take proper remedial action. *McCown v. St. John's Health Sys., Inc.*, 349 F.3d 540, 542 (8th Cir. 2003).

The elements of conspiracy to deprive a person of Constitutional rights under 42 U.S.C. § 1985(3) are: (1) that the defendant did conspire; (2) for the purpose of depriving,

either directly or indirectly, any person or class of person of equal protection of the laws, equal privileges and immunities under the law; (3) that one or more of the conspirators did, or caused to be done an act in furtherance of the object of conspiracy; and (4) that another person was injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States. *Larson ex rel Larson v. Miller*, 76 F.3d 1446, 1454 (8th Cir. 1996). A plaintiff must at least allege some facts "which would suggest that [defendants] 'reached an understanding' to violate [her] rights." *See, e.g., Nelson v. City of McGehee*, 876 F.2d 56, 59 (8th Cir. 1989).

Government entities are not liable under section 1983 for an employee's actions under a theory of respondeat superior, but the county may be held liable under § 1983 for a rights violation when it either had an unlawful policy or practice that caused the rights violation, or a "policymaker" directly caused the rights violation. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986); *Yellow Horse v. Pennington County*, 225 F.3d 923, 928 (8th Cir. 2000). Locating a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. *Board of County Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 403-04 (1997). "[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Id.* at 404 (citing *Monell v. Dep't of Soc. Serv. of City of New York*, 436 U.S. 668, 690-91 (1978).

Under section 1983, to establish liability against a defendant in his individual capacity, because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each

5

government-official defendant, through the official's own individual actions, has violated the Constitution. *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010); *Iqbal*, 129 S. Ct. at 1948. "Thus, 'each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.'" *Parrish*, 594 F.3d at 1001 (quoting *Iqbal*, 129 S. Ct. at 1949). A supervising officer can be liable for an inferior officer's constitutional violation only if the supervising officer directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation. *Parrish*, 594 F.3d at 1001; *Ottman*, 341 F.3d at 761 (stating that "[t]he supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he or she] might see") (internal citation omitted).

The court finds that Crutcher-Sanchez's amended complaint states a plausible claim for racial discrimination under 42 U.S.C. § 1981 and for gender discrimination under § 1983. Crutcher-Sanchez alleges she is a member of a protected class and has suffered a tangible employment action in that she was terminated from her employment under circumstances from which a discriminatory intent can be inferred. The factual allegations of the second amended complaint, taken as true, show severe and pervasive offensive incidents that could rise to the level of a race- and/or a gender-based hostile work environment. Crutcher-Sanchez alleges facts showing she was treated differently than similarly-situated male employees and alleges conduct that is severe or pervasive enough that a reasonable person would find it hostile or abusive. Further, she has sufficiently alleged a claim for retaliation. With respect to the conspiracy claim, Crutcher-Sanchez has alleged facts that show a meeting of the minds. She alleges that the defendants acted in concert to foster and

promote an abusive environment and that two individuals performed an act in furtherance of the conspiracy in drafting the termination letter and forging the signature.

Crutcher-Sanchez has alleged conduct by defendants Wagner, Herron and Ramirez that would give rise to individual liability. The court further finds that her complaint sufficiently states that defendants' actions were either the decisions of a policy-maker or were taken pursuant to an official policy or custom of Dakota County. Accordingly, the court finds that the defendants' motions to dismiss Crutcher-Sanchez's claims should be denied. Accordingly,

IT IS ORDERED:

1. The joint motion to dismiss filed by defendants County of Dakota, Rodney Herron and James L. Wagner (Filing No. 46) is denied;

2. Defendant Joe Ramirez's motions to dismiss (Filing Nos. 61 and 63) are denied.

3. Defendants shall respond to the plaintiff's second amended complaint within 14 days of the date of this order.

DATED this 6th day of August, 2010.

BY THE COURT:

s/ Joseph F. Bataillon
Chief District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.