# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ALANA CRUTCHER-SANCHEZ, | ) | |
| f/k/a Alana Smith, | ) | |
| | ) | |
| Plaintiff, | ) | 8:09CV288 |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| COUNTY OF DAKOTA, NEBRASKA, | ) | |
| and JAMES L. WAGNER, | ) | |
| RODNEY HERRON, and | ) | |
| JOE RAMIREZ, in their | ) | |
| official and individual capacities, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on the defendants' Motion for Protective Order (Filing No. 82) to preclude disclosure of the so-called Spencer Fane Report based on privilege and confidentiality concerns.  The defendants filed a brief (Filing No. 84) and an index of evidence (Filing No. 83) in support of the motion.  The plaintiff filed a brief (Filing No. 94), with evidence (Filing No. 94-1) attached, in opposition to the motion.  The defendants filed a brief (Filing No. 101) and an index of evidence (Filing No. 102) in reply.  After a telephone conference with counsel for the parties on January 7, 2011, in a related case, the defendants submitted the disputed documents to the court for *in camera* review.[1]

## BACKGROUND

This case arises from the plaintiff's employment with Dakota County, Nebraska, as a Correctional Officer.  The plaintiff originally filed suit on August 24, 2009.  **See** Filing No. 1 - Complaint.  On March 2, 2010, the plaintiff filed her Second Amended Complaint.  **See** Filing No. 45.  The allegations contained in the plaintiff's Second Amended Complaint are summarized as follows.  The plaintiff, a Native American female, began working as a Correctional Officer for the Dakota County Sheriff's Office in October of 2006.  The plaintiff

---

[1] Accordingly, the documents are now sealed and maintained by the Clerk of Court in connection with *Charvette Williams v. County of Dakota, Nebraska, et al.*, Case No. 8:09CV201.

reported directly to the defendant Rodney Herron (Herron), Chief Deputy for Dakota County.  Herron made statements about the plaintiff's appearance and would "look her up and down."  At the time of her employment, the plaintiff also worked at a retail store, where Herron called the plaintiff and stated he could see her from where he was located outside the store.  In October of 2006, while outside of work, Herron told the plaintiff, "You are going home with me."  The plaintiff complied.  Herron and the plaintiff began a sexual relationship at that time.  At work, Herron directed the plaintiff to accompany him while he transported prisoners, then demanded the plaintiff engage in oral sex and heavy petting.  During October, November, and December of 2006, Herron and the plaintiff frequently had sexual encounters.  In November of 2006, the defendant Sheriff James L. Wagner gave the plaintiff poems and chocolates and asked the plaintiff to dinner and to spend time with him.  She refused.  By the end of December, Herron no longer had a sexual relationship with the plaintiff.  Herron ordered other deputies to follow the plaintiff and told them that he wanted to find a reason to have the plaintiff fired.  In January 2007, Herron told the plaintiff that Sheriff Wager said there would never be a "nigger, spick or Indian working under the sheriff."  **See** Filing No. 45 - Second Amended Complaint ¶ 20.  On another occasion when the plaintiff arrived at work with her hair in braids, Sheriff Wagner said, "The Indian is coming out now."  ***Id.*** ¶ 21.  On January 11, 2007, the plaintiff received an Employee Warning Report for having jail keys in her possession while she was off duty, which, she alleges, was a common practice among the deputy sheriffs.  On January 18, 2007, the plaintiff received a termination letter dated January 22, 2007.  The plaintiff believes Herron and another deputy, the defendant Joe Ramirez, created the letter and forged Sheriff Wagner's signature.

Based on these allegations, the plaintiff asserts claims for discrimination and a sexually and racially hostile work environment under the equal protection clause of the U.S. Constitution (Counts I and II) and 42 U.S.C. § 1981 (Count III), and conspiracy to interfere with civil rights (Count IV).  **See** Filing No. 45 - Second Amended Complaint.  The defendants deny liability for the plaintiff's claims.  **See** Filing Nos. 69, 70, 71, and 72.  Moreover, "[t]he [Dakota County] defendants affirmatively allege that the ***Ellerth/Faragher***

defense to vicarious liability is applicable under the facts of this case to bar or reduce damages." **See** Filing No. 71 - Answer ¶ 56.

On October 6, 2010, the plaintiff requested production of documents related to "any investigations made by the Defendants regarding the circumstances surrounding the Complaint filed against the Defendants and conclusions drawn therefrom. . . .[including] all investigative materials created or generated by Spencer, Fane, Britt & Browne." **See** Filing No. 83 - Ex. K Request for Production No. 5.[2]  The record shows the Spencer Fane Report comprises the investigation materials and an attorney's conclusions about the work environment at Dakota County's correctional facility.

After a meeting held on January 16, 2007, Dakota County's Board of Commissioners hired the law firm Spencer, Fane, Britt & Browne to conduct an investigation.  During the meeting, the commissioners went into an executive session to "discuss possible litigation" based on a complaint about favoritism one commissioner received from Richard Criss (Criss), a male jailer at the correctional facility.  Sheriff Wagner, an elected official, had complete authority over the correctional facility and did not report to the commissioners.  However, based on the complaint, another commissioner called Dakota County's insurance carrier for advice.  The insurance carrier's representative advised the commissioner to hire a law firm to investigate the complaint.  Dakota County's sexual harassment policy, at the time, required Dakota County to investigate all complaints made pursuant to the policy.

As part of the Spencer Fane investigation, Criss and the plaintiff, who had retained legal counsel, were interviewed in January 2007.  On April 9, 2007, the commissioners decided to allow the investigation to continue.  The later investigation involved interviews of Sheriff Wagner, Herron, and seven other employees of the correctional facility.  On June 4, 2007, the commissioners formally designated County Attorney Edward Matney (Matney) as the sole county official to receive any report from Spencer Fane.  On July 30, 2007, Matney informed the commissioners that he had forwarded the (unopened) Spencer Fane Report to Attorney General Jon Bruning's office for a determination about whether criminal

---

[2] The court notes the plaintiff failed to file a certificate of service with the court as required by NECivR 34.1(b).

charges were warranted. In a July 30, 2007, letter a member of Bruning's office stated he had received and reviewed the Spencer Fane Report, but the allegations did not appear to rise to the level of a criminal matter. Matney returned the Spencer Fane Report to Spencer Fane and did not provide it to the commissioners.

On November 3, 2010, the defendants filed their motion for a protective order. **See** Filing No. 82. The defendants argue the Spencer Fane Report and any matters associated with the internal investigation by defense counsel were prepared in anticipation of litigation and constitute attorney work-product or privileged material under the attorney-client privilege or as self-critical analysis. ***Id.*** In addition, the defendants argue the Spencer Fane Report is protected as confidential by public policy under Neb. Rev. Stat. § 84-712.05(4) and (5). ***Id.*** Further, the defendants contend no waiver of any privilege has occurred because the investigation was kept confidential and, although the defendants pleaded the ***Ellerth-Faragher*** defense in their Answer, there is no indication the defendants intend to rely on the Spencer Fane Report as part of their defense in this case. **See** Filing No. 101 - Reply p. 14-15; **see also** Filing No. 71 - Answer ¶ 56.


## ANALYSIS

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents . . ." Fed. R. Civ. P. 26(b)(1). However, "[t]he District Court does have discretion to limit the scope of discovery." ***Credit Lyonnais v. SGC Int'l, Inc.***, 160 F.3d 428, 431 (8th Cir. 1998). A party may move for an order protecting disclosure or discovery, which is granted only upon a showing of good cause. **See** Fed. R. Civ. P. 26(c). The party moving for the protective order has the burden to demonstrate good cause for issuance of the order. ***Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2***, 197 F.3d 922, 926 (8th Cir. 1999). A person opposing production of documents based on privilege or seeking protection for documents that fall under the attorney-client privilege has the burden of establishing the privilege applies. **See** Fed. R. Civ. P. 26(b)(5). Similarly, a person opposing production bears the

burden of establishing a waiver, by disclosure or otherwise, did not occur.  See *United States v. Hatcher*, 323 F.3d 666, 675 (8th Cir. 2003) (Bye, J., concurring).

As a general rule, "[t]he attorney-client privilege protects communications made in confidence by a client and a client's employees to an attorney, acting as an attorney, for the purpose of obtaining legal advice."  *Sandra T.E. v. South Berwyn School Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010).  The attorney-client privilege is "the oldest of the privileges for confidential communications known to the common law."  *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  Because they reduce the amount of information discoverable during the course of a lawsuit, the attorney-client privilege and, to an even greater extent, the attorney work-product doctrine are narrowly construed.  See *Ross v. City of Memphis*, 423 F.3d 596, 600 (6th Cir. 2005); *In re Grand Jury Subpoenas*, 454 F.3d 511, 520 (6th Cir. 2006).  Federal Rule of Evidence 501 provides that privileges in federal-question cases generally are "governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience."  Fed. R. Evid. 501; see *In re Bieter Co.*, 16 F.3d 929, 935 (8th Cir. 1994).

> The attorney-client privilege encourages  full and frank communication between attorneys and their clients so that clients may obtain complete and accurate legal advice.  But the privilege protecting attorney-client communications does not outweigh society's interest in full disclosure when legal advice is sought for the purpose of furthering the client's on-going or future wrongdoing.

*In re BankAmerica Corp. Sec. Litig.*, 270 F.3d 639, 641 (8th Cir. 2001).

Additionally, "[t]he attorney-client privilege is strongest where a client seeks counsel's advice to determine the legality of conduct before taking action."  *Id.* (**citing** *Upjohn*, 449 U.S. at 392).  However, communications between attorney and client are not *per se* privileged.

The Supreme Court in *Upjohn* determined the communications of an employee of a corporation with the corporation's counsel made in order to secure legal advice concerning matters within the scope of the employee's corporate duties, consistent with the underlying purposes of the attorney-client privilege, are protected from disclosure.  *Upjohn*, 449 U.S. at 394-95.   Such protection has been extended to independent

consultants or contractors who are the functional equivalent of an employee. **See, e.g.,** *In re Bieter*, 16 F.3d at 938. At the same time, the privilege belongs to the client organization. *Ross*, 423 F.3d at 603-04; *United States v. Chen*, 99 F.3d 1495, 1502 (9th Cir. 1996). "[T]he power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors." *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348-49 (1985).

The party asserting a privilege to prevent disclosure of information bears the burden of establishing the privilege. *United States v. Hatcher*, 323 F.3d 666, 675 (8th Cir. 2003); *Rabushka ex rel. U.S. v. Crane Co.*, 122 F.3d 559, 565 (8th Cir. 1997) (holding party "met its burden of providing a factual basis for asserting the privileges when it produced a detailed privilege log stating the basis of the claimed privilege for each document in question, together with an accompanying explanatory affidavit of its general counsel"). Accordingly, the defendants must show all five of the following requirements are met.

> [T]he attorney-client privilege is applicable to an employee's communication if (1) the communication was made for the purpose of securing legal advice; (2) the employee making the communication did so at the direction of his corporate superior; (3) the superior made the request so that the corporation could secure legal advice; (4) the subject matter of the communication is within the scope of the employee's corporate duties; and (5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents.

*Diversified Indus., Inc.*, 572 F.2d 596, 609 (8th Cir. 1977) (en banc).

In addition to the attorney-client privilege, the defendants may shield information from discovery if it is subject to the attorney work-product doctrine. "The work-product doctrine protects documents prepared by attorneys in anticipation of litigation for the purpose of analyzing and preparing a client's case." *Sandra T.E.*, 600 F.3d at 618. The work-product doctrine was established by *Hickman v. Taylor*, 329 U.S. 495 (1947), and is now codified in Fed. R. Civ. P. 26(b)(3)(A): "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." However, under certain circumstances, such

materials may be discoverable if "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). In any event, the court "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B).[3]

With regard to claiming privilege or protection of trial-preparation materials, Rule 26 provides:

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
> (i)   expressly make the claim; and
> (ii)  describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5).

As relevant here, "[w]ork-product protection applies to attorney-led investigations when the documents at issue can fairly be said to have been prepared or obtained because of the prospect of litigation." *Sandra T.E.*, 600 F.3d at 622 (internal quotation

---

[3]    The doctrine was designed to prevent "'unwarranted inquiries into the files and mental impressions of an attorney'" and "recognizes that it is 'essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.'" *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 402 (8th Cir. 1987) (**quoting** *Hickman v. Taylor*, 329 U.S. 495 (1947)). . . .

There are two types of protected work product. "Ordinary" work product is subject to production only upon a showing of substantial need and inability to secure the substantial equivalent without undue hardship. *In re Chrysler Motors Corp. Overnight Evaluation Program Litig.*, 860 F.2d 844, 846 (8th Cir. 1988). . . . "Opinion" work product includes documents that contain the mental impressions, conclusions or opinions of an attorney and is discoverable only in "rare and extraordinary circumstances." *In re Chrysler Motors Corp.*, 860 F.2d at 846; *Simon*, 816 F.2d at 402 n.3 (**quoting** *In re Murphy*, 560 F.2d 326, 336 n. 20 (8th Cir. 1977)). Opinion work product is virtually absolutely immune from discovery. *In re Grand Jury Proceedings*, 473 F.2d 840, 848 (8th Cir. 1973).

*Bieter Co. v. Blomquist*, 156 F.R.D. 173, 179 (D. Minn. 1994).

marks and citation omitted).  Work-product protected documents are only those documents prepared under the prospect of litigation.  *Id.*  Accordingly, "precautionary documents," for example those documents "developed in the ordinary course of business" or for the "remote prospect of litigation" are not subject to protection.  *Id.*  The defendants must show the disputed documents were "prepared because 'some articulable claim, *likely* to lead to litigation, [has] arisen.'"  *Id.* (citation marks omitted).

The plaintiff seeks two categories of documents within the Spencer Fane Report.  **See** Filing No. 94 - Response p. 10.  The first category contains communications between Spencer Fane and Dakota County regarding the 2007 investigation.  The second category is the transcripts of interviews conducted by Spencer Fane as part of the 2007 investigation.  The court will address each category seriatim.

## 1.    Communications Between Spencer Fane and Dakota County

The plaintiff seeks three documents listed on the defendants' privilege log that appear to be communications between Spencer Fane and Dakota County in connection with the investigation of the work environment at Dakota County's correctional facility.  **See** Filing No. 94 - Response p. 10.  The documents are (1) an undated letter of engagement; (2) a July 23, 2007, Report/memorandum with cover letter to Matney; and (3) an August 21, 2007, letter to Matney.  **See** Filing No. 83 - Ex. 1 - Privilege Log p. 2 Nos. 1, 13, and 15.  Specifically, the letter of engagement is a letter dated February 16, 2007, with Spencer Fane's "Standard Terms of Engagement" form sent from Mark McQueen, an attorney at Spencer Fane, addressed to the Dakota County Board of Commissioners and naming Betty O'Neill, a commissioner.  The July 23, 2007, Report/memorandum is a document summarizing Spencer Fane's investigation and providing conclusions about informal complaints made about the working environment of the correctional facility.  The July 23, 2007, document includes a letter dated July 23, 2007, written by Kelly K. Brandon, an attorney at Spencer Fane, and addressed to Matney.  The document also includes a Memorandum dated July 12, 2007, from Kelly K. Brandon to Mark E. McQueen.  The August 21, 2007, letter was written by Mark E. McQueen and addressed to Matney.  The

August 21, 2007, letter provides additional recommendations to the commissioners related to the investigation.

The plaintiff argues the correspondence is not protected by the attorney-client privilege because the defendants fail to establish the commissioners retained Spencer Fane to provide "an opinion of law," "legal services," or "assistance in some legal proceeding." **See** Filing No. 94 - Response p. 10.  The plaintiff contends the law firm was retained merely to conduct an internal investigation of workplace misconduct, rather than as a legal advisor.  *Id.* at 11.  The plaintiff maintains the commissioners did not retain Spencer Fane in response to any pending or threatened litigation.  *Id.*  The plaintiff asserts that if Spencer Fane was retained to provide legal advice, then production of the letter of engagement may resolve the dispute.  *Id.* at 12.

One issue before the court is whether these communications were made for the purpose of seeking legal advice.  **See *Diversified*, 572 F.2d at 609**.  Under such analysis, "when a matter is committed to a professional legal advisor, it is 'prima facie committed for the sake of legal advice and [is], therefore, within the privilege absent a clear showing to the contrary.'"  ***In re Bieter*, 16 F.3d at 938** (**quoting *Diversified*, 572 F.2d at 610**).

The communications at issue were all from legal counsel to Dakota County.  There was a direct attorney-client relationship between Spencer Fane and Dakota County, as evidenced by their conduct and the letter of engagement.  The communications contain information Spencer Fane received from the commissioners regarding the scope of the attorney-client relationship.  The subject matter of the correspondence is the investigation of conduct at the correctional facility.

The court cannot assume Spencer Fane's investigative work was not work acting as an attorney for purposes of privilege.  **See *Sandra T.E.*, 600 F.3d at 618-19**.  "[F]actual investigations performed by attorneys as attorneys fall comfortably within the protection of the attorney-client privilege."  ***Id.*** at 619 (**citing *Upjohn*, 449 U.S. at 401**).  The court finds the defendants have presented evidence that the investigation was committed to Spencer Fane, a professional legal advisor, for legal advice.  The fact that some of the employee complaints may provide evidence of work misconduct, does not diminish the seriousness of the allegations or the threat of litigation for Dakota County.  Spencer Fane employed

attorneys to use their legal expertise to conduct the investigation, including interviews. These attorneys used their expertise and judgment during the process to gather relevant information and form opinions to advise their client. Accordingly, the defendants have met their burden of showing such documents are subject to the privilege. Further, the plaintiff has failed to make a clear showing disputing the defendants' claim such documents were prepared in response to a request for legal advice. In any event, the court has reviewed the documents at issue and finds the attorney-client privilege is applicable and appropriate under the circumstances. The court need not require production of privileged materials, including the letter of engagement, in order to enable the plaintiff to make an independent determination of the appropriateness of the privilege.

The correspondence is also subject to work-product protection. The plaintiff argues the commissioners undertook the investigation, not in response to an actual threat of litigation, but for the purpose of making business decisions for future conduct. **See** Filing No. 94 - Response p. 13-14. The plaintiff highlights evidence indicating the commissioners thought litigation was "possible," although no litigation had been threatened or initiated at the time, and the defendants characterize the investigation as "an investigation into complaints of possible misconduct by Dakota County employees." *Id.* at 14. The defendants provide evidence from commissioners who state they were concerned about litigation and potential liability in terms of civil and criminal violations. **See** Filing No. 101 - Reply p. 10-11. Other evidence presented supports the commissioners' affidavits. The commissioners convened a closed-door session and contacted their insurance carrier and legal counsel shortly after hearing about the complaints from Criss and Crutcher-Sanchez, who had already engaged her own legal counsel. Further, the defendants suggest the commissioners' conduct was a deviation from the normal course of business. *Id.* at 12. Although no lawsuits had been filed at the time, both Criss and Crutcher-Sanchez later filed suit, which underscores the reasonableness of the commissioners' belief litigation was likely. Under these circumstances, the court finds the defendants have met their burden of showing the relevant documents were prepared based on an articulable claim, likely to lead to litigation. Further, upon review of the documents, the court finds the correspondence is subject to the work-product doctrine. These documents appear to be

prepared by counsel for the defendants in anticipation of litigation and contain the mental impressions, conclusions or opinions of counsel regarding such litigation.  The plaintiff does not argue a substantial need for the documents may outweigh the protection and require disclosure.

For the reasons stated above, the court concludes the communications between Spencer Fane and Dakota County including (1) the letter of engagement; (2) the July 23, 2007, Report/memorandum with cover letter address to Matney; and (3) the August 21, 2007, letter address to Matney, are protected materials under the attorney-client privilege and the work-product doctrine.  The court further finds no waiver of privilege for these documents occurred with respect to how the documents were handled.  The court will address the waiver issue as it applies to the ***Ellerth-Faragher*** defense below.

## 2.     Interviews

The plaintiff seeks the transcripts of the interviews conducted as part of the Spencer Fane investigation.  **See** Filing No. 94 - Response p. 10.  The plaintiff argues these interviews cannot be considered privileged under the attorney-client privilege because the interviews were not for the purpose of seeking legal advice and because the interviewees were not clients.  *Id.* at 12.  This is particularly apparent, according to the plaintiff, because some of the interviewees had retained other counsel.  *Id.*

The defendants argue the interviews conducted by Spencer Fane were for the purpose of providing legal advice.  **See** Filing No. 101 - Reply p. 10-11.  The Dakota County Board of Commissioners encouraged employees and others to submit to interviews about the work environment.  *Id.*  The interviews were kept confidential.  Under these circumstances, the defendants argue the interviews were communications between an attorney and client.  *Id.*

The court addressed the attorney-client privilege and work-product protection above and finds those doctrines also shield the interview transcripts from production.  However, the court will examine the parties' arguments about whether the interviewees can be considered clients in greater detail.  Typically, "[t]he attorney-client privilege protects communications made in confidence by a client and a client's employees to an attorney,

11

acting as an attorney, for the purpose of obtaining legal advice." *Sandra T.E.*, 600 F.3d at 618. Protection extends to independent consultants or contractors who are the functional equivalent of an employee. *In re Bieter*, 16 F.3d at 938.

> [A]n employee of a corporation, . . . is sufficiently identified with the corporation so that his communication to the corporation's lawyer is privileged where the employee made the communication at the direction of his superiors and where the subject matter upon which the lawyer's advice was sought by the corporation and dealt with in the communication was within the performance by the employee of the duties of his employment.

*Diversified*, 572 F.2d at 602.

During the investigation, Spencer Fane interviewed several employees of the correctional facility and representatives of Dakota County. These interviewees need not be within Dakota County's "control group" as suggested by the plaintiff. The evidence shows the interviewees were "precisely the sort of person[s] with whom a lawyer would wish to confer confidentially in order to understand [Dakota County's] reasons for seeking representation." *In re Bieter*, 16 F.3d at 938 (alteration added). The interviews were confidential in nature, the commissioners asked the employees to participate, the employees had unique information about their employment environment, and the interviews were directly related to the purpose of Spencer Fane's representation of Dakota County. Accordingly, the court finds the interviews are protected by the attorney-client privilege. The fact that a third-party or other legal counsel may have been present for some of the interviews does not change the analysis with respect to interviews meant to be kept confidential.

In any event, the attorney-client privilege does not provide the only protection for the interviews. In *Sandra T.E.*, the court noted:

> [T]he attorney-client privilege applies to statements made by witnesses regardless of whether they were currently employed by the [defendant] at the time they were interviewed. . . . [T]he distinction between present and former employees is irrelevant for purposes of the attorney-client privilege. . . . [Moreover,] the work-product doctrine would protect any notes from interviews

> with former employees as equally as it protects notes from
> interviews with third parties who never worked for the [party].

*Sandra T.E.*, 600 F.3d at 618 (alterations added) (internal citations omitted).

As discussed above, the court finds the interviews were conducted by counsel for Dakota County in anticipation of litigation and contain the mental impressions, conclusions or opinions of counsel regarding such litigation. The identity of the interviewees does not change the analysis.

**3.     Waiver:  *Ellerth-Faragher* Defense**

The attorney-client privilege and work-production doctrine protection may be waived. **See *United States v. Nobles*, 422 U.S. 225, 239 (1975)**; **see also *Baker*, 209 F.3d at 1055** (applying state law) ("A waiver of the attorney-client privilege may be found where the client places the subject matter of the privileged communication at issue."); ***In re Chrysler Motors Corp. Overnight Evaluation*, 860 F.2d 844 (8th Cir. 1988)**.  The Eighth Circuit

> has recognized that the [work-product doctrine] should be
> applied in a commonsense manner in light of reason and
> experience as determined on a case-by-case basis.  The
> privilege is designed to balance the needs of the adversary
> system to promote an attorney's preparation in representing a
> client against society's interest in revealing all true and material
> facts relevant to the resolution of a dispute.

*Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726, 732 (8th Cir. 2002) (alteration added) (internal quotation omitted) (**citing *Hickman*, 329 U.S. at 510-11**; ***Pittman v. Frazer*, 129 F.3d 983, 988 (8th Cir. 1997)**).

> [I]n certain circumstances a party's assertion of factual claims
> can, out of considerations of fairness to the party's adversary,
> result in the involuntary forfeiture of privileges for matters
> pertinent to the claims asserted.  The loss of the privilege in
> these circumstances is sometimes described as *implied
> waiver*, sometimes as *"at issue" waiver* because it results from
> the party having placed a contention at issue.

*John Doe Co. v. United States*, 350 F.3d 299, 302 (2d Cir. 2003) (**citing *United States v. Nobles*, 422 U.S. 225 (1975)** (other citations omitted)); **see also *Baker v. General Motors Corp.*, 209 F.3d 1051, 1055 (8th Cir. 2000)**.

The plaintiff contends the court should find implied waiver of any privilege with regard to the Spencer Fane Report's interviews and memorandum.  The plaintiff argues the defendants place the subject documents at issue when the defendants affirmatively allege "that the ***Ellerth/Faragher*** defense to vicarious liability is applicable under the facts of this case to reduce or bar damages."  **See** Filing No. 94 - Response p. 15-19 (**quoting** Filing No. 71 - Answer ¶ 56).  Additionally, the defendants allege Dakota County "exercised reasonable care to prevent sexual harassment or discrimination" and it took prompt corrective action upon learning of any alleged sexually harassing behavior."  Filing No. 71 - Answer ¶¶ 57-58.   The plaintiff asserts these defenses are based on the defenses recognized in ***Burlington Indus., Inc. v. Ellerth***, 524 U.S. 742 (1998); ***Faragher v. City of Boca Raton***, 524 U.S. 775, 807 (1998).

> The ***Ellerth-Faragher*** affirmative defense consists of two necessary elements:  (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior[ ] and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise.

***Fuller v. Fiber Glass Sys., LP***, 618 F.3d 858, 864 (8th Cir. 2010).

The plaintiff argues these affirmative defenses presumably rely on Dakota County's hiring of Spencer Fane to conduct an investigation about "this and its companion lawsuits."  **See** Filing No. 94 - Response p. 17.  The plaintiff relies on a brief and statements made by the defendants in a related case filed by another correctional facility employee, Toni Duncan.  ***Id.*** at 18.  In that case, according to the plaintiff, the defendants argue the alleged sexual harassment was not severe or pervasive enough to create a hostile work environment.  ***Id.***  Additionally, the defendants, in the ***Duncan*** case specifically mention hiring "an outside law firm to conduct an internal investigation into any possible misconduct."  ***Id.*** (**quoting** the defendants' summary judgment brief p. 22-23 Filing No. 51 in ***Duncan v. County of Dakota, et al.***, Case No. 8:09CV277).

The defendants assert they have not waived protection for the subject documents because they do not rely on the Spencer Fane Report in this case.  **See** Filing No. 101 - Reply p. 14-15.   The defendants argue the materials protected by the work-product

doctrine are not subject to the waiver in connection with the ***Ellerth/Faragher*** defense. ***Id.*** at 14. Additionally, the defendants state they have not yet determined whether they will rely on any of the Spencer Fane Report materials for their defense in this case. ***Id.*** The defendants deny they waived privileges in the ***Duncan*** matter, particularly because Ms. Duncan did not participate in the investigation and counsel in the ***Duncan*** case carefully drafted the summary judgment materials to avoid references to privileged materials. ***Id.*** at 15. Moreover, while the plaintiff here did participate in the investigation, she also alleges a tangible adverse employment action was taken against her when she was terminated. ***Id.*** Assuming her allegation is true, the ***Ellerth/Faragher*** defense is inapplicable in this case. ***Id.*** at 14.

It does not appear the defendants rely on the adequacy of the investigation as an affirmative defense. **See *McGrath v. Nassau County Health Care Corp.*, 204 F.R.D. 240, 243-44 (E.D.N.Y. 2001)** (holding privileges as to investigation waived when sufficiency or adequacy of investigation placed at issue by the defendant). Under the circumstances, the court does not find an implied waiver based on the defendants' affirmative defenses in this matter. The defendants did not waive privilege to the subject documents by generally alleging they may rely on the ***Ellerth/Faragher*** defense to vicarious liability and that they exercised reasonable care to prevent and correct promptly any alleged sexually harassing behavior. The court finds that, on balance, fundamental fairness does not require disclosure of the subject documents. This is particularly true because the Spencer Fane investigation took place after the plaintiff's alleged improper termination. The plaintiff has full and fair access to the true and material facts at issue and the subject documents would not further reveal otherwise unattainable relevant material facts. Accordingly, at this time the plaintiff is not entitled to production of the documents at issue on the basis of any waiver implied by the defendants' affirmative defenses. Upon consideration,

**IT IS ORDERED:**

The defendants' Motion for Protective Order (Filing No. 82) is granted.

## ADMONITION

Pursuant to NECivR 72.2 any objection to this Order shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Order.  Failure to timely object may constitute a waiver of any objection.  The brief in support of any objection shall be filed at the time of filing such objection.  Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 10th day of February, 2011.

BY THE COURT:

 s/ Thomas D. Thalken
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.