IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ALANA CRUTCHER-SANCHEZ, f/k/a ALANA SMITH, <br><br>Plaintiff, <br><br>v. <br><br>COUNTY OF DAKOTA, NEBRASKA, JAMES L. WAGNER, RODNEY HERRON, and JOE RAMIREZ, in their individual and official capacities, <br><br>Defendants. | 8:09CV288 <br><br> MEMORANDUM AND ORDER |

This matter is before the court on the motion for summary judgment filed on behalf of the defendants County of Dakota ("the County"), Nebraska, Rodney Herron ("Herron"), Joe Ramirez ("Ramirez"), and James L. Wagner ("Wagner"), in their official capacities, Filing No. 119; the motion for summary judgment filed on behalf of defendant Ramirez in his individual capacity, Filing No. 123; the motion for summary judgment filed on behalf of defendant Herron in his individual capacity, Filing No. 126; and the motion for summary judgment filed on behalf of defendant Wagner in his individual capacity, Filing No. 129. This is an action for race discrimination in violation of 42 U.S.C. § 1982, sexual harassment in violation of 42 U.S.C. § 1983, and conspiracy in violation of 42 U.S.C. § 1985.

The County argues that it is entitled to qualified immunity if Ramirez, Herron, or Wagner are entitled to qualified immunity on their individual-capacity claims. The County also asserts the *Ellerth-Faragher* defense,[1] asserting that it had an effective anti-harassment policy in place and the plaintiff failed to utilize it. In response, the plaintiff

---

[1]See *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 752 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998).

argues there are genuine issues of material fact with respect to whether the County maintained a policy or custom of sexual harassment.

Defendant Ramirez argues that he did not engage in a conspiracy with the County or Herron to terminate the plaintiff's employment and that there were other non-discriminatory reasons for firing her.  Further, he argues that he is entitled to qualified immunity and is protected from liability by the intracorporate conspiracy doctrine. Defendant Herron argues he is entitled to qualified immunity and further asserts that the undisputed evidence establishes that the conduct at issue was neither severe nor pervasive so as to amount to actionable sexual or racial harassment.  He also denies that he was involved in any conspiracy to terminate the plaintiff's employment.  In response to defendant Herron's motions, the plaintiff asserts there are genuine issues of fact that preclude summary judgment.  Defendant Wagner argues that he is entitled to qualified immunity and further asserts that the evidence establishes that his conduct towards the plaintiff was neither severe nor pervasive as to amount to sexual or racial harassment.  The plaintiff argues that there are genuine issues of material fact with respect to the defendant's conduct and the customs and policies of the Dakota County Jail.

**I. Background**

The plaintiff is a female, born on August 21, 1972, and is a member of the Paiute-Shoshone Tribe.  Filing No. 120, Exhibit (Ex.") A, Plaintiff Dep. 9-10, 530.  The plaintiff was hired as a correctional officer for Dakota County on October 2, 2006.  Filing No. 120, Ex. B, Wagner Dep. 135-36; Filing No. 120, Ex. A, Plaintiff Dep. 24-25.  She was listed as the eleventh most qualified out of twelve total applications, but was offered the job ahead of

the other applicants. Filing No. 141, Ex. H, Dakota County Sheriff's Merit Commission Jailer List, October 3, 2005.

The evidence shows that the plaintiff disputes that the County is an at-will employer and asserts that the Dakota County Jail is governed by a union contract that contains a provision prohibiting the County from disciplining or discharging employees without just cause. Filing No. 141, Ex. G, Comprehensive Master Agreement Between County of Dakota County, Nebraska and Fraternal Order of Police, Dakota County Lodge #49, July 1, 2004-June 30, 2007. At all relevant times, defendant Wagner was the Sheriff of Dakota County (Filing No. 120, Ex. B, Wagner Dep. 43, 55), defendant Herron was the Chief Deputy of Dakota County (Filing No. 120, Ex. D, Herron Dep. 81-82), and defendant Ramirez was a Sergeant and Shift Supervisor in the Dakota County Jail (Filing No. 120, Ex. C, Ramirez Dep. 75-76).

The plaintiff testified that she and defendant Herron had a sexual relationship, and that she was afraid she would lose her job since Herron was her supervisor. Filing No. 120, Ex. A, Crutcher-Sanchez Dep. at 183-84. Further, she testified that Herron instructed her to not tell anyone about their sexual relationship. *Id.* at 97-98, 336. Also, she testified that some sexual encounters were unwanted or unplanned because she was intoxicated. *Id.* at 79-81, 99-100. She does not dispute that she contacted Herron on a number of occasions and invited him to meet with her outside of work. *Id.* at 561. The plaintiff also acknowledged that Herron never threatened her job if she did not have sex with him. *Id.* at 188.

There is evidence that defendant Wagner made inappropriate racial comments to the plaintiff. *Id.* at 345, 195-96, 200, 422, 423-24. The plaintiff testified that Wagner called

3

her and asked her out several times, once even in his office. *Id.* at 307-308, 332-334, 408-09, 444. The plaintiff also asserts that Wagner's behavior toward her changed around the time of her employee warning reports in mid-January, 2007. *Id*. at 332-33, 408-09, 444.

The record shows that the plaintiff received a written warning on January 11, 2007, from her direct supervisor, Joe Ramirez. *Id.* at 135-36. The written warning related to a verbal altercation with another female co-employee and a failure to follow the chain of command. *Id.* The plaintiff received another write-up and was subsequently terminated by the County on or about January 19, 2007, for removing the "pink keys" from the jail and then denying about it to her supervisor, Ramirez. Filing No. 120, Ex. C, Ramirez Dep. at 101-06. She testified others were treated differently for similar conduct. *Id.*, Ex. A, Crutcher-Sanchez Dep. at 393-94. The plaintiff further testified that she was terminated less than three weeks after her last sexual encounter with Herron. Filing No. 141, Ex. I, Declaration of Alana Crutcher-Sanchez.

In addition, the record shows a dispute about whether the plaintiff's termination letter was forged. *See* Filing No. 120, Ex. A, Crutcher-Sanchez Dep. at 435-36; Filing No. 141, Ex. D, Shelby Dep. at 121-23, 247-50; Filing No. 141, Ex. C, Castro-Moctezuma Dep. at 123-33. Although Herron and Wagner testified that Wagner made the decision to terminate the plaintiff's employment and that Herron did not have input on the termination decision, there is also evidence that Herron wanted the plaintiff fired and that he was willing to do "everything and anything." *See* Filing No. 120, Ex. D, Herron Dep. at 133-36; Filing No. 120, Ex. B, Wagner Dep. at 165-66, 171; Filing No. 141, Ex. D, Shelby Dep. at 121-23, 247-50; Filing No. 141, Ex. C, Castro-Moctezuma Dep. at 123-33.

The defendants argue that the plaintiff did not complain to anyone with the County about any action she perceived as inappropriate that affected her while at work (Filing No. 120, Ex. A, Crutcher-Sanchez Dep. at 233-34). The plaintiff asserts, however, that the County's Employment Handbook, which contains a sexual harassment policy, was never provided to her and she was not aware of any work misconduct. Complaint procedures, Filing No. 120, Ex. B, Wagner Dep. at 138-39. Plaintiff's last day of employment with Dakota County was on or about January 18, 2007. Filing No. 120, Ex. A, Plaintiff Dep. at 297.

## II. Discussion

### A. Law

On a motion for summary judgment, the question before the court is whether the record, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005). "Where unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir. 1995).

The burden of establishing the nonexistence of any genuine issue of material fact is on the moving party. Fed.R.Civ.P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Therefore, if the defendant does not meet its initial burden with respect to an issue, summary judgment must be denied notwithstanding the absence of opposing

5

affidavits or other evidence. *Adickes,* 398 U.S. at 159-60; *Cambee's Furniture, Inc. v. Doughboy Recreational Inc.*, 825 F.2d 167, 174 (8th Cir. 1987).

Once defendant meets its initial burden of showing there is no genuine issue of material fact, plaintiff may not rest upon the allegations of his or her pleadings but rather must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. *See* Fed.R.Civ.P. 56(e)(2); *Chism v. W.R. Grace & Co.,* 158 F.3d 988, 990 (8th Cir. 1998). "Although facts are viewed in the light most favorable to the non-moving party, in order to defeat a motion for summary judgment, the non-moving party cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." *Carter v. St. Louis Univ.,* 167 F.3d 398, 401 (8th Cir. 1999).

There is no "discrimination case exception" to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial. *Torgerson v. City of Rochester,* 643 F.3d 1031, 1031 WL 2135636 *8 (8th Cir. 2011) (en banc) (quoting *Fercello v. County of Ramsey,* 612 F.3d 1069, 1077 (8th Cir. 2010)). Nevertheless, "[a]t the summary judgment stage, the court should not weigh the evidence, make credibility determinations, or attempt to determine the truth of the matter." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249 (1986). The court's function is to determine whether a dispute about a material fact is genuine, that is, whether a reasonable jury could return a verdict for the nonmoving party based on the evidence. *Id.* at 248. To be material, a fact "must affect the outcome of the lawsuit under governing law." *Id.* "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's favor]." *Id.* at 255. "If reasonable

6

minds could differ as to the import of the evidence," summary judgment is inappropriate. *Id.* at 250. In a discrimination case, when the record on summary judgment is fully developed, the "court need only decide whether, on the record as a whole, there is a genuine issue for trial on the ultimate question of discrimination *vel non*." *Torgerson*, 643 F.3d at ___, 2011 WL 2135636, *32 (Colloton, J., concurring).

The plaintiff's "right to be free from gender discrimination is secured by the equal protection clause of the Fourteenth Amendment." *Tipler v. Douglas County, Neb.*, 482 F.3d 1023, 1027 (8th Cir. 2007); *Ottman v. City of Independence*, 341 F.3d 751, 756 (8th Cir. 2003) ("intentional gender discrimination in public employment by persons acting under color of state law violates the Equal Protection Clause of the Fourteenth Amendment"). Equal protection claims may be asserted under 42 U.S.C. § 1983. *See, e.g., Mercer v. City of Cedar Rapids,* 308 F.3d 840, 844 (8th Cir. 2002). Discrimination based on gender that creates a hostile or abusive working environment also violates § 1983. *Weger v. City of Ladue,* 500 F.3d 710, 171 (8th Cir. 2007) (hostile work environment claims under Title VII and § 1983 are subject to the same analysis). To establish a prima facie hostile work environment claim for harassment by a supervisor, a plaintiff must prove: (1) that she was a member of a protected group; (2) that unwelcome harassment occurred; (3) a causal nexus between the harassment and her membership in the protected group; and (4) that the harassment affected a term, condition, or privilege of employment. *Jenkins v. Winter,* 540 F.3d 742, 748 (8th Cir. 2008).

Title VII "prohibits both *quid pro quo* harassment, where an employee's submission to or rejection of a supervisor's unwelcome sexual advances is used as the basis for employment decisions, and hostile work environment harassment, where 'the workplace

7

is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Tenge v. Phillips Modern Ag Co.*, 446 F.3d 903, 908 (8th Cir. 2006) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993)). Thus, to avoid summary judgment on a *quid pro quo* harassment claim, the plaintiff must present evidence capable of proving that "submission to unwelcome advances was an express or implied condition for receiving job benefits or [that] refusal to submit resulted in a tangible job detriment." *Newton v. Cadwell Labs.*, 156 F.3d 880, 882 (8th Cir. 1998).

"Harassment affects a term, condition, or privilege of employment if it is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Nitsche v. CEO of Osage Valley Elec. Co-op.*, 446 F.3d 841, 845 (8th Cir. 2006) (quoting *Harris,* 510 U.S. at 21). "[A] sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Id.* at 846 (quoting *Faragher v. City of Boca Raton,* 524 U.S. at 775, 787 (1998)). "In determining whether a work environment was sufficiently hostile or abusive, [courts] examine the totality of the circumstances, including whether the discriminatory conduct was frequent and severe; whether it was physically threatening or humiliating, as opposed to merely an offensive utterance; and whether it unreasonably interfered with the employee's work performance." *Id*. In order for a person to claim sexual favoritism, there must be evidence of either *quid pro quo* or hostile environment sexual harassment. See *Tenge, 446 F.3d at 908*.

8

Government entities are not liable under section 1983 for an employee's actions under a theory of respondeat superior, but the County may be liable if the plaintiff can prove an official policy or a widespread custom that violated the law and caused the plaintiff's injury. See *Artis v. Francis Howell North Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1181 (8th Cir. 1998); *Polacco v. Curators of University of Missouri*, 37 F.3d 366, 369 (8th Cir. 1994) (stating that an employer may be held liable even if its individual agents are not). Locating a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. *Board of County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 403-04 (1997). "[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Id.* at 404 (citing *Monell v. Dep't of Soc. Serv. of City of New York*, 436 U.S. 668, 690-91 (1978). A supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation. *Id.*; *Ottman v. City of Independence, Mo.*, 341 F.3d 751, 761 (8th Cir. 2003) (stating that the supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he or she] might see).

"Qualified immunity protects government officials from liability for civil damages if they have not violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Akins v. Epperly*, 588 F.3d 1178, 1183 ( 8th Cir. 2009). Qualified immunity is a defense that "provides ample protection to all but plainly

9

incompetent or those who knowingly violate the law." *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). The two-step analysis necessary to determine whether qualified immunity applies involves a consideration of "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitution right, and (2) if so, whether that right was clearly established at the time of the defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223 (2009). It is clearly established that an employee's "right to be free from gender discrimination is secured by the Equal Protection clause of the Fourteenth Amendment." *See Duckworth v. St. Louis Metro. Police Dep't*, 491 F.3d 401, 405 (8th Cir. 2007).

In order to prove the existence of a civil rights conspiracy under § 1985(3), the plaintiff must prove: (1) that the defendants did "conspire," (2) "for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or equal privileges and immunities under the laws," (3) that one or more of the conspirators did, or caused to be done, "any act in furtherance of the object of the conspiracy," and (4) that another person was "injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States." *Larson by Larson v. Miller*, 76 F.3d 1446, 1454 (8th Cir. 1996) (en banc); *see* 42 U.S.C. § 1985(3). An entity or governmental body cannot conspire with itself. *Runs After v. United States*, 766 F.2d 347, 354 (8th Cir. 1985) (explaining the intracorporate conspiracy doctrine). Moreover, individual agents or employees, acting in their official capacity, cannot conspire when they act together with other agents or employees of the entity or governmental body in taking official action on behalf of the entity. *See id.* (noting that there is no conspiracy if the conspiratorial conduct challenged is essentially a single act by a single corporation

10

acting exclusively through its own directors, officers, and employees, each acting within the scope of his or her employment). However, the Eighth Circuit Court of Appeals has rejected the applicability of the intracorporate conspiracy doctrine to § 1985(3) actions where the individual defendants "act outside the scope of their employment for personal reasons." *Garza v. City of Omaha*, 814 F.2d 553, 556-57 (8th Cir. 1987) (noting that such "personal reasons" include "acting to further their personal bias" in violation of 42 U.S.C. § 1985(3)).

The *Ellerth/Faragher* affirmative defense protects employers in harassment cases in which an employee fails to stop the harassment by using the employer's effective anti-harassment policy. *McCurdy v. Arkansas State Police*, 375 F.3d 762, 772 (8th Cir. 2004). The defense, which is available only when no tangible employment action been taken, "comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Ellerth*, 524 U.S. at 765; *Faragher v. City of Boca Raton,* 524 U.S. 775, 778 (1998).

### B. Analysis

Viewing the evidence in the light most favorable to the plaintiff, the court finds that the defendants have not shown that they are entitled to summary judgment. The court has reviewed the evidence submitted by the parties and finds that, if the testimony of the plaintiff and other witnesses were credited, a reasonable juror could draw inferences of discrimination, harassment, or conspiracy. There are genuine issues of material fact with respect to the whether employees were given preferential treatment for engaging in sexual

relationships and the extent to which the plaintiff was adversely affected by the defendants' conduct. There is evidence that suggests that improper actions were taken by policy-makers or were performed pursuant to a custom or practice of the County. Further, the court finds there are genuine issues of material fact with respect to the severity and pervasiveness of the conduct. Whether the conduct rose to the level of severe and pervasive conduct that affects a term or condition of employment is for the jury to decide.

The defendants have not shown they are entitled to summary judgment on the conspiracy claim because there are issues of fact with respect to whether the defendants acted outside the scope of their employment for personal reasons. On the evidence that has been presented, the court cannot determine as a matter of law that the defendants are entitled to a judgment in their favor on the conspiracy claim. There is at least some evidence that suggests an agreement among the defendants to deprive the plaintiff of rights. Resolution of these issues will involve assessments of credibility and present questions of fact for the jury. Nor have the defendants shown they are entitled to a defense of qualified immunity. There are genuine issues with respect to the predicate facts underlying the qualified immunity defense. At the time of the events at issue, it was clear to a reasonable law enforcement officer that women have a right to be free of gender-based discrimination.

The court also finds that the County's reliance on the *Ellerth-Faragher* defense is misplaced because the evidence does not establish as a matter of law that the County had an *effective* anti-harassment policy in place or that it took adequate measures to enforce it. Further, the court finds the defendants are not entitled to summary judgment on the

basis of qualified immunity. Accordingly, the court finds the defendants' motions for summary judgment should be denied.

IT IS ORDERED that the defendants' motions for summary judgment (Filing Nos. 119, 123, 126; and 129) are denied.

DATED this 11th day of August, 2011.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

13